UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24 CV 787 CDP |
| | ) | |
| DOLLAR TREE STORES, INC., et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Atain Specialty Insurance Company brings this declaratory judgment action

in diversity against Dollar Tree Stores, Inc., Greenbriar International, Inc., and

Oralabs, Inc. (collectively "the corporate defendants"), seeking a judgment

declaring that under its insurance policy with Oralabs it owes no coverage to – and

thus has no duty to defend or indemnify – any of the corporate defendants in an

underlying action that alleges that liquid breath drops manufactured by Oralabs and

distributed and sold by Greenbriar and Dollar Tree caused a minor child to sustain

bodily injury after ingesting the product.   Oralabs moves to dismiss Atain's

complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

claim.   Dollar Tree and Greenbriar have answered Atain's complaint, but they also

join in Oralabs' motion to dismiss.   (*See* ECF 25.)   The minor child, C.T.,

through her mother and next friend, Sarah King, has answered the complaint.   For the reasons that follow, I will grant the corporate defendants' motion to dismiss and dismiss this declaratory judgment action with prejudice.

**Background**[1]

On May 16, 2013, in St. Louis County, Missouri, 18-month-old C.T. obtained from her grandmother's purse a bottle of Icy Breeze Cinnamint liquid breath drops that contained cinnamal, also known as hexyl cinnamaldehyde. C.T.'s grandmother discovered C.T. with the bottle in her mouth.   The bottle was partially chewed, and C.T. was whimpering and making an unpleasant face.   C.T. was taken to a local hospital where a swallow study showed narrowing of the esophagus from caustic ingestion.   Because of the extent of damage, C.T.'s esophagus was removed and replaced with an artificial esophagus that was constructed from a removed portion of her colon.   As a result, C.T. suffers pain and has lost the full use and motion of her throat.   She has undergone speech therapy for swallowing, esophageal dilations, and other treatment.   She requires additional treatments and therapies, and those needs will continue into the future.

In December 2020, C.T., through her mother and next friend, Sarah King, brought products liability and negligence claims in the Circuit Court of St. Louis

---

[1] The following Background is taken from the facts alleged in Atain's Complaint for Declaratory Judgment (ECF 1) as well as the underlying Petition for Damages filed in state court on behalf of C.T. (ECF 1-1).

County against Dollar Tree as the seller of Icy Breeze Cinnamint liquid breath drops; and Greenbriar as the distributor of the breath drops to Dollar Tree stores, and particularly to the store in St. Louis County from which C.T.'s grandmother purchased the breath drops at issue.   Dollar Tree and Greenbriar then filed a third-party petition for contribution against Oralabs, the manufacturer of the breath drops.

When C.T. ingested the breath drops in May 2013, Oralabs was insured under a commercial general liability insurance policy provided by Atain with an endorsement that covered products including "breath drops" and applied to "all 'bodily injury' . . . that arises out of [the covered products] if the 'bodily injury' . . . occurs after you have relinquished control of those products."   (ECF 1-2 at hpp. 7, 13.)[2]   The policy also included a "Total Pollution Exclusion" endorsement that excluded from coverage "'[b]odily injury' . . . caused by or arising out of in whole or in part, the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."   (*Id.* at hp. 29.)   That Exclusion defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste."   (*Id.*)   Vendors that distribute or sell Oralab's covered products are insured under the policy.   (*Id.* at hp. 10.)

---

[2] Given the inconsistent pagination of the insurance policy and its forms and endorsements, I will refer to the page number identified in the ECF header ("hp.") when citing the policy.

Atain was placed on notice of C.T.'s lawsuit and has undertaken the defense of the corporate defendants in that case.   Atain filed the instant action in this Court seeking a declaration that it does not owe a duty to defend or indemnify the corporate defendants against C.T.'s lawsuit because the policy's Total Pollution Exclusion bars coverage for C.T.'s claims.   Atain also seeks recovery of attorney's fees, costs expended, and disbursements paid in defense of that action. The corporate defendants move to dismiss Atain's complaint for failure to state a claim, arguing that the policy covers the claims at issue in the underlying action and that Atain cannot meet its burden to show that the Exclusion applies.

## Legal Standard – Motion to Dismiss

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.   Fed. R. Civ. P. 12(b)(6).   When reviewing a Rule 12(b)(6) motion, I assume the complaint's factual allegations as true and construe them in plaintiff's favor.   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).   To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief "that is plausible on its face."   *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).   The factual allegations must be sufficient to "'raise a right to relief above the speculative level.'"   *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). More than labels and conclusions are required.   *Twombly*, 550 U.S. at 555.

When a defendant files its answer before moving to dismiss a complaint under Rule 12(b)(6), as Dollar Tree and Greenbriar have done here, I construe the motion to dismiss as a motion for judgment on the pleadings. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). The legal standard for such a motion is the same as that for a Rule 12(b)(6) motion to dismiss. *Clemons v. Crawford,* 585 F.3d 1119, 1124 (8th Cir. 2009); *NCMIC Ins. Co. v. Blalock*, No. 4:05CV805 HEA, 2005 WL 1926233, at *2 (E.D. Mo. Aug. 10, 2005). Given that interpretation of an insurance policy is a matter of law, I may resolve a declaratory judgment action that seeks such interpretation on a motion to dismiss or for judgment on the pleadings when there is no material factual dispute on the pleadings. *Safeco Ins. Co. of Am. v. Schweitzer*, 372 F. Supp. 3d 884, 888 (W.D. Mo. 2019); *Safeco Ins. Co. of Am. v. Yount*, No. 4:19-CV-00890-MTS, 2020 WL 6445840, at *2 (E.D. Mo. Nov. 3, 2020). The motion need not be converted to one for summary judgment.

There are no material factual disputes on the relevant issues to be addressed on the corporate defendants' motion to dismiss this declaratory judgment action, and the parties do not argue otherwise. I therefore proceed to consider the motion under Rule 12(b)(6)'s legal standard.

## Choice of Law

Atain contends that Colorado law applies in this diversity case given that its

Colorado broker issued the insurance policy in Colorado to Oralabs, a Colorado corporation.   The corporate defendants argue that as the forum state, Missouri law applies because there is no conflict between the relevant law of Colorado and Missouri.   I agree that Missouri law applies.

"State law controls the construction of insurance policies when a federal court has jurisdiction based on diversity of citizenship." *J.E. Jones Const. Co. v. Chubb & Sons, Inc.*, 486 F.3d 337, 340 (8th Cir. 2007).   I follow the choice-of-law rules of the forum state – here, Missouri – in determining which state's substantive law applies in this action.   *Birnstill v. Home Sav. of Am.*, 907 F.2d 795, 797 (8th Cir. 1990).   For contract claims, Missouri courts apply the most-significant-relationship test as defined in the Restatement.   *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994); *Nationwide Mut. Ins. Co. Harris Med. Assocs., LLC*, 973 F. Supp. 2d 1045, 1052 (E.D. Mo. 2013) (insurance contract).   But before becoming entangled in "messy issues of conflict of laws, a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states."   *Phillips v. Marist Soc'y of Wash. Province*, 80 F.3d 274, 276 (8th Cir. 1996) (quoting *Barron v. Ford Motor Co. of Canada, Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992)).   *See also In re Payless Cashways*, 203 F.3d 1081, 1084 (8th Cir. 2000) ("because the relevant law of both Missouri and Texas is substantially similar, we will not entangle ourselves in the morass of choice of law

determination."). If there is no conflict in the relevant law, the forum state's law

applies. *Collins v. Metropolitan Life Ins. Co.*, No. 4:22-CV-129 RLW, 2023 WL

1765192, at *4 (E.D. Mo. Feb. 3, 2023).

Atain contends that there is a true conflict of law here given that an insurer's

duty to defend under Colorado law is based on a narrower scope of information

than what is allowed under Missouri law – namely, that Colorado law requires that

the duty to defend be discerned from only the allegations contained within the four

corners of the underlying complaint, whereas Missouri law permits consideration

of the pleading's allegations *and* other known or reasonably ascertainable facts that

become available. The corporate defendants contend, however, that Colorado's

four-corners law on the duty to defend is not relevant to the issue to be decided

here – that is, whether the policy's Total Pollution Exclusion applies to C.T.'s

underlying claims – and thus plays no role in the choice-of-law analysis. They

also contend that, regardless, even if Colorado's four-corners law applies,

determining whether the policy exclusion applies to C.T.'s claims requires

consideration of only the facts alleged in C.T.'s underlying petition and does not

require any information from outside that pleading.[3] Consequently, defendants

argue, the only relevant law that actually applies to resolving the coverage issue in

---

[3] As this is a Rule 12(b)(6) motion to dismiss, I also consider the facts alleged in Atain's complaint for declaratory judgment as well as the exhibits attached thereto, including and especially the insurance policy at issue.

this declaratory judgment action is that which governs construction of insurance contracts, which is the same under both Colorado and Missouri law.[4]   Because there is no conflict regarding the relevant law governing construction of insurance contracts, defendants contend that the law of Missouri, as the forum state, applies.

I agree with the corporate defendants.   In all relevant respects, Missouri and Colorado law do not conflict regarding the issues I must address on defendants' motion to dismiss.   I therefore apply Missouri law in determining the motion.

## Discussion

Under Missouri law, the interpretation of an insurance policy is a question of law.   *Schmitz v. Great Am. Assurance Co.,* 337 S.W.3d 700, 705 (Mo. banc 2011). The insured bears the burden of proving coverage under an insurance policy, and the insurer bears the burden of proving the applicability of any exclusion from coverage.   *Fischer v. First Am. Title Ins. Co.,* 388 S.W.3d 181, 187 (Mo. Ct. App. 2012).   When construing an insurance policy, I must apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance."   *Allen v. Continental W. Ins. Co.,* 436 S.W.3d 548, 553-54 (Mo. banc 2014) (internal quotation marks and citation omitted).   *See also Ballas Nails &*

---

[4] Atain appears to agree that there is no conflict between Missouri and Colorado law regarding the construction of insurance contracts, as it relies on both Missouri and Colorado law to support its arguments on that issue.   (*See* Pltf.'s Oppos., ECF 27 at pp. 6-12.)

*Spa, LLC v. Travelers Cas. Ins. Co. of Am.*, 511 F. Supp. 3d 978, 981 (E.D. Mo. 2021).   "Insurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage."   *Williams v. Employers Mut. Cas. Co.*, No. 4:13-CV-2393 RLW, 2015 WL 892556, at *5 (E.D. Mo. Mar. 2, 2015).

If an insurance policy is unambiguous, I must enforce the policy as written. *Allen,* 436 S.W.3d at 554.   If the policy is ambiguous, however, any ambiguity must be resolved against the insurer-drafter.   *Id.*   "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy.   Language is ambiguous if it is reasonably open to different constructions."   *Seeck v. Geico Gen. Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007) (internal quotation marks and citation omitted).   Whether an ambiguity exists in an exclusion clause is assessed by examining that clause in the context of the entire policy.   *American Nat'l Prop. & Cas. Co. v. Wyatt*, 400 S.W.3d 417, 420 (Mo. Ct. App. 2013); *see also Progressive Nw. Inc. Co. v. Talbert*, 407 S.W.3d 1, 9 (Mo. Ct. App. 2013) (court must not interpret insurance policy provision in isolation but must evaluate policy as a whole).   If an insurance contract appears to grant coverage at one point and takes it away at another, an ambiguity exists. *Seeck*, 212 S.W.3d at 133; *Behr v. Blue Cross Hosp. Serv., Inc.*, *of Mo.*, 715 S.W.2d 251, 256 (Mo. banc 1986).   *See also Hullverson Law Firm, P.C. v. Liberty*

*Ins. Underwriters, Inc.*, 25 F. Supp. 3d 1185, 1194 (E.D. Mo. 2014).

The general liability provisions of the Atain policy here appear to provide broad coverage for the insured:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies.   We will have the right and duty to defend the insured against any "suit" seeking those damages.

(ECF 1-2 at hp. 39, Sec. I.1.a.)   Under two endorsements to the policy, coverage is provided for bodily injury that arises out of specifically covered products "manufactured, sold, handled or distributed" if the bodily injury occurs after the insured(s) have relinquished possession of those products.   (*Id.* at hpp. 7, 13.)   As noted above, Oralabs and vendors that distribute or sell its covered products are insureds under the policy.   (*Id.* at hp. 10.)   The products specifically covered are:

> BREATH DROPS, LIP BALM, SOUR CANDY, HAND SANITIZER, TEETH GRINDING GUARD, CREST WHITE STRIPS, MINI TOOTHBRUSH, BREATH STRIPS AND COCOA BUTTER LOTION

(*Id.* at hp. 7.)

Atain relies on the Total Pollution Exclusion, however, to assert that coverage does not apply to the claims made in C.T.'s lawsuit:

> This insurance does not apply to * * * "[b]odily injury" . . . caused by or arising out of in whole or in part, the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(ECF 1-2 at hp. 29, Excl. Endt. § VIII.)   The Exclusion defines "pollutants" as:

> any solid, liquid, gaseous or thermal irritant or contaminant including

smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

(*Id.*)   The Missouri Court of Appeals has described such a total pollution exclusion as "standard language used by the insurance industry."   *See Wyatt*, 400 S.W.3d at 420.

In *Wyatt*, the Missouri Court of Appeals set out at length the historical background of the total pollution exclusion, observing, "[i]n short, [that] the history of the pollution-exclusion clause in its various forms demonstrates that its purpose was to have a broad exclusion for traditional environmentally related damages."   400 S.W.3d at 422 (internal quotation marks and citation omitted). The court noted, however, that insurers "have repeatedly sought to exclude coverage under this exclusion for injuries that have occurred outside the realm of what would be considered traditional environmental pollution," *id.*, and it observed that there was a nationwide split as to whether the exclusion is a) ambiguous, and b) applicable to incidents outside of traditional environmental pollution.   *Id.* at 422-23.   As recognized by the Eighth Circuit in *United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, 751 F.3d 880 (8th Cir. 2014), the Missouri Supreme Court has yet to determine if the exclusion is limited to only traditional environmental pollution and, since *Wyatt*, the Missouri Court of Appeals has applied the exclusion to non-environmental circumstances.   *See id.* at 885 n.2.   Regardless, the question of ambiguity remains.

Here, Atain acknowledges that the policy does not define many terms included in the Total Pollution Exclusion such as "dispersal," "escape," "irritant," or "chemicals," but it argues that the Exclusion is nevertheless unambiguous because the undefined terms are given their ordinary meaning as set forth in the dictionary. I disagree that that approach relieves the Exclusion of its ambiguity in the circumstances of this case. *See Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 905 (8th Cir 2017) (court must determine whether term is ambiguous "as applied to the particular substance in the factual setting at issue."). As to what constitutes a "pollutant" under the Exclusion, Atain identifies only "irritant" and "chemicals" as relevant to C.T.'s claims and proffers the following definitions:

> "Irritant" means "causing irritation, specifically: tending to produce physical irritation." *Irritant*, merriam-webster.com http://merriam-webster.com/dictionary/irritant (lastvisited July 18, 2024). "Chemical" means "a substance obtained by a chemical process or producing a chemical effect." *Chemical*, merriam-webster.com, http://merriam-webster.com/dictionary/chemical (last visited July 18, 2024).

(Pltf.'s Oppos., ECF 27 at p. 7.) Although the Missouri Supreme Court instructs courts to use the dictionary method when interpreting undefined terms in insurance policies, including pollution exclusions, *see Doe Run Res. Corp. v. American Guar. & Liab. Ins.*, 531 S.W.3d 508, 512 (Mo. banc 2017), I nevertheless must consider dictionary definitions as an ordinary purchaser of insurance would understand them in the context of the entire policy. *Wyatt*, 400 S.W.3d at 424; *cf.*

*Doe Run*, 531 S.W.3d at 513 (addressing dictionary definitions when interpreting policy from purchaser's perspective).   I may not adopt an interpretation of a policy that renders an absurd result.   *Walsh v. State Farm Auto. Ins. Co.*, 662 S.W.3d 105, 111-12, 113 (Mo. Ct. App. 2023).

When considered in the context of the entire policy here, Atain's broad interpretation of the Total Pollution Exclusion as it pertains to C.T.'s claims yields an absurd result.   As noted above, the Atain policy includes endorsements that, when read together, provide coverage for "bodily injury" that arises out of "breath drops" if the injury occurs after the insured has relinquished possession of the product.   (ECF 1-2 at hpp. 7, 13.)   Based on the allegations of the underlying petition, C.T.'s claims appear to satisfy the three requirements for that coverage to apply:   1) she sustained bodily injury 2) arising from breath drops (a named covered product) 3) after the corporate defendants had relinquished control of them.   There is no ambiguity in that coverage.   Atain's reading of the Total Pollution Exclusion, however, would render that coverage meaningless and indeed illusory.

Atain asserts that its proffered dictionary definitions render the breath drops an "irritant" as evidenced by the injury to C.T.'s esophagus after ingesting the product, as well as a "chemical" given that the drops produced a chemical effect by burning or destroying organic tissue.   (*See* Pltf.'s Oppos., ECF 27 at pp. 7, 9.)

- 13 -

Accordingly, by Atain's definition, the specifically covered product itself is a "pollutant" subject to the Total Pollution Exclusion.  And Atain argues that the circumstances of its ingestion in this case show that it "escaped" from its container, thus bringing C.T.'s bodily injury from a pollutant within the terms of the Exclusion.[5]

As set out above, the Total Pollution Exclusion bars coverage for injuries caused by or arising out of a pollutant's "discharge, dispersal, seepage, migration, release or escape," all of which undefined words in the policy.  In *Hartford Underwriter's Ins. Co. v. Estate of Turks*, 206 F. Supp. 2d 968 (E.D. Mo. 2002), the Court recognized that the definitions of each of those words "describe some type of movement from one place to another, from a contained position to a free one."  206 F. Supp. 2d at 976.[6]  That recognition was significant in *Hartford* given the underlying claim of lead poisoning arising out of the insured's exposure to lead paint:  "Normally, '[l]ead paint is not hazardous when it remains embedded in a

---

[5] Atain asserts in its complaint that C.T. "chewed holes" through the plastic tube of breath drops and was exposed to the liquid drops "through the chewed opening," which caused the breath drops to be released from the tube by an unintended method (chewed holes) and "escape" the container.  (ECF 27 at pp. 7-9.)  Atain appears to go beyond the four-corners of C.T.'s underlying petition in making those assertions given that the petition does not allege that C.T. chewed "through" the container, that her chewing created holes in the container, or that she ingested the liquid through chewed holes.

[6] As with Atain's policy here, the Hartford policy did not define the words "discharge, dispersal, seepage, migration, release, or escape," so the Court looked to standard dictionary definitions for their meaning.  *Hartford Underwriter's*, 206 F. Supp. 2d at 976.

wall; it becomes so only when it is somehow released from the wall and ingested

by humans.'"   *Id.* at 975 (quoting *Dorchester Mut. Fire Ins. v. First Kostas Corp.,*

*Inc.*, No. CIV.A. 97-01054, 1998 WL 90742, at *3 (Mass. Super. Feb. 26, 1998))

(alteration in *Hartford*).   The recognition that the exclusion's words describe

"movement . . . from a contained position to a free one" is equally significant here.

In *Hartford*, the lead paint ("pollutant") was not intended to be released from

a painted wall and ingested by a human being, and the Court found persuasive

decisions from other courts that held that the presence of lead dust or chips in an

apartment qualified as a discharge, dispersal, release, or escape for that reason.

206 F. Supp. 2d at 976-77 (listing cases).   *See Peace ex rel. Lerner v.*

*Northwestern Nat'l Ins. Co.*, 596 N.W.2d 429, 438-39 (Wis. 1999) ("Common

sense tells us that lead paint that never leaves a wall or ceiling does not cause

harm.   Implicit in the Negligence Complaint . . . must be an allegation that the

lead paint somehow separated from the wall or ceiling, and entered the air, or fell

on the floor, furniture or fixtures in the apartment.") (quoting *Lefrak Org., Inc. v.*

*Chubb Custom Ins. Co.,* 942 F. Supp. 949, 954 (S.D.N.Y. 1996)) (cited

approvingly in *Hartford*).   In C.T.'s case, however, the intended use of the

covered breath drops *is* their movement from a contained position to a free one.

Indeed, the drops' purpose *depends* on their being released from a container and

ingested by humans, which is exactly what occurred here according to C.T.'s

petition.   Accordingly, to exclude coverage based on the movement of breath drops from a contained position to a free one would deny coverage for the very risk Atain explicitly insured – that is, bodily injury arising from the expected and intended use of a specifically covered product – and permit Atain to escape its express obligations made to Oralabs and its vendors.   *See Essex Ins. Co. v. Ragland Mills, Inc.*, No. 06-0737-CV-W-FJG, 2008 WL 351014, at *8 (W.D. Mo. Feb. 6, 2008).   "[C]ontracts cannot both promise something and take it away without being illusory."   *Brotherhood Mut. Ins. Co. v. Evangelical Free Church of Am.*, 572 F. Supp. 3d 694, 704 (E.D. Mo. 2021) (citing *Behr*, 715 S.W.2d at 256). "An interpretation of insurance policy language which may render a portion of the policy illusory 'should not be indulged in.'"   *Hullverson Law Firm*, 25 F. Supp. 3d at 1191 (quoting *Cano v. Travelers Ins. Co.*, 656 S.W.2d 266, 271 (Mo. banc 1983)).

"[W]here one provision of a policy appears to grant coverage and another to take it away, an ambiguity exists that will be resolved in favor of coverage." *Hullverson Law Firm*, 25 F. Supp. 3d at 1194 (quoting *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 48 (Mo. banc 2009)); *see also Behr*, 715 S.W.2d at 256 (policy's taking away what it explicitly promised renders the insurance contract ambiguous).   As stated above, the policy unambiguously grants coverage for the bodily injury C.T. sustained in the specific circumstances underlying that injury.

Although Atain argues that dictionary definitions take such coverage away under the Total Pollution Exclusion, it is more reasonable for an insured to understand that the Exclusion under *this* policy does not include the very product the policy explicitly covers (breath drops) for injuries caused by its ingestion through the mouth, which is its intended and anticipated use.[7]   When viewed in context of the entire policy, it cannot be said that an ordinary person of average understanding in purchasing insurance would attach the same meaning to the Total Pollution Exclusion as Atain does in the factual setting at issue here – especially when Atain's proffered definitions encompass the covered product's composition and use.   To conclude otherwise would result in policy coverage for injuries caused by ingestion of covered breath drops unless the injury is caused by ingestion of covered breath drops.   This interpretation is absurd.   *Cf. Essex Ins. Co.*, 2008 WL 351014, at *8 ("Essex cannot escape its obligations to the insured under a policy for elevator inspection insurance when the claim involves an injury arising out of an elevator inspection.")   Because Atain's interpretation of the Total Pollution Exclusion takes away coverage that is granted in another provision of the policy, the Exclusion is rendered illusory and ambiguous.   I must resolve the ambiguity in favor of coverage.

As the insurer, Atain bears the burden of proving that the Total Pollution

---

[7] This is so regardless of whether the drops entered C.T.'s mouth through a chewed hole or a manufactured, pre-formed hole in the tube.

Exclusion applies to C.T.'s claims in the underlying action.   It has failed to do so here.   "Ambiguous provisions of a policy designed to cut down, restrict, or limit insurance coverage already granted, or introducing exceptions or exemptions must be strictly construed against the insurer."   *Sargent Const. Co., Inc. v. State Auto. Ins. Co.*, 23 F.3d 1324, 1326 n.3 (8th Cir. 1994) (quoting *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210-11 (Mo. banc 1992)).   For the reasons set out above, the Total Pollution Exclusion is ambiguous when read in the context of the entire policy.   Construed strictly against Atain, the Exclusion does not bar coverage for C.T.'s action.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Oralabs, Inc.'s Motion to Dismiss [17], joined by defendants Dollar Tree Stores, Inc. and Greenbriar International, Inc. [25], is **GRANTED.**

A separate Order of Dismissal is entered herewith.


_____

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 20th day of September, 2024.